BANK OF MOBILE *v.* TISHOMINGO SAVINGS INSTITUTION ET AL.

1. MORTGAGE. *Absolute deed recorded. Defeasance unrecorded. Judgment creditor.*
   The failure of the grantor in an absolute deed of conveyance which has been recorded to have a separate defeasance executed by his grantee also recorded, does not give to such instruments the character of an unrecorded mortgage and entitle a judgment creditor of such grantor having no actual notice thereof, to subject to his judgment the property thus conveyed.

2. SAME. *In form of absolute deed. As evidence of fraud.*
   An absolute conveyance intended to operate only as a mortgage is not conclusive evidence of an intention on the part of the grantor and grantee to defraud the creditors of the former, but is a fact to be considered in determining the question of fraud, and entitled to such weight as the surrounding circumstances may indicate.

APPEAL from the Chancery Court of Chickasaw County.

HON. BAXTER MCFARLAND, Chancellor.

During the years 1878, 1879, 1880, and 1881, J. R. McIntosh borrowed from the Tishomingo Savings Institution, through its president, A. H. Taylor, various amounts of money, for which he gave his several promissory notes, payable to Taylor, and as collateral security therefor conveyed to Taylor on different dates, by deeds absolute in form, several parcels of real estate; and on the 9th of April, 1881, Taylor executed to McIntosh a defeasance of those deeds, conditioned that the property therein conveyed should be reconveyed to McIntosh upon the payment of his promissory notes to Taylor. The deeds from McIntosh to Taylor were promptly recorded, but the defeasance was never recorded. McIntosh remained in possession of the property, exercising acts of ownership over it.

Upon his promissory note, dated January 28th, 1881, the Bank of Mobile, of Mobile, Ala., on the 5th of April, 1883, recovered a judgment against J. R. McIntosh, which was duly enrolled on the 9th of April, 1883.

McIntosh having failed to pay his notes to Taylor, the Tishomingo Savings Institution, on the 17th of September, 1883, filed the bill in this cause, stating that the several conveyances from

McIntosh to Taylor were merely mortgages for the security of the grantor's indebtedness to the complainant, and asking that the mortgaged property be sold to pay such indebtedness. McIntosh, Taylor, and the Bank of Mobile were made defendants to the bill. The Bank of Mobile answered the bill and made its answer a cross-bill, charging that the deeds from McIntosh to Taylor were executed with the intent on the part of the grantor and grantee to defraud the creditors of the former, claiming that at the time of the recovery of its judgment against McIntosh the respondent had no notice by record or actual knowledge of the defeasance mentioned in the complainant's bill, or that the deeds referred to were intended as mortgages, and asking that the property conveyed to Taylor be sold to pay off the respondent's judgment.

Upon final hearing of the cause, a decree was rendered dismissing the cross-bill filed by the Bank of Mobile and granting the relief prayed for in the original bill. From this decree the Bank of Mobile appealed.

*Harper & Baskin*, for the appellant.

McIntosh's deed to Taylor purports to be an absolute and unconditional conveyance, and if it is not such as to all persons ignorant of its real character, it is not *bonâ fide*, but merely colorable. As between the parties, we have no objection to the transaction; but as to third innocent parties, this transaction must stand or fall as the record discloses. The recorded deeds must govern and must stamp the transaction as good or bad between third persons.

A case on all-fours with the one at bar, reported in 21 Ala. 264, *Bryant* v. *Young*, has been well considered and ably discussed by that distinguished tribunal, and, in accordance with the main current of authorities, that court held that such a transaction is collusive and colorable and cannot be sustained. North Carolina and Pennsylvania both hold the same doctrine; the Carolina cases are referred to in the above case in Alabama report. These courts hold that an absolute deed coupled with a secret defeasance is an unrecorded mortgage when the absolute deed is simply recorded.

The Bank of Mobile, both by virtue of the registry laws of our State and by virtue of McIntosh remaining in possession of the property as the owner thereof, acquired more interest in the property than the judgment debtor, McIntosh, really had. In *Wooten* v. *Clark*, 1 Cushman 77, Mr. Justice Clayton approvingly quotes, " That the leading object of the statute of 13 Eliz., chapter 5, was to prevent *collusive transfers of the legal ownership* which placed the property of a man indebted out of the reach of his creditors and left to him the beneficial enjoyment of that which ought in conscience to be open to their legal remedies."

The defeasance in this case is nothing but a mortgage when coupled with the absolute deed to which it refers and comes within the express provision of our registry law. It is useless to argue the necessity of recording such defeasances, for they are nothing but deeds of trust or mortgages. In *Prewett* v. *Dobbs*, 13 S. & M., the court says of a similar instrument, " That if it had been executed within this State, or if it had been made for the conveyance of property located here, no question about the necessity of recording the instrument could have arisen."

See also *Bryant* v. *Young*, 21 Ala. 264; *Dey* v. *Dunham*, 2 Johnson Chan. 181; *Director of the Poor* v. *Royer*, 43 Pa. State 146; *Prewett* v. *Dobbs*, 13 S. & M. 440; *Jaques* v. *Weeks*, 7 Watts (Pa.) 261; *Friedley* v. *Hamilton*, 17 S. & R. (Pa.) 70.

*Whitfield, Young & Stanley,* for the appellees.

The transaction was not a legal mortgage but an equitable mortgage only, since the so-called defeasance was neither under seal nor made at the same time with the deed. Jones on Mort., § 244.

Courts of equity converting an absolute sale into an equitable mortgage will proceed so as not to prejudice the rights of the grantee, and it is sufficient to satisfy the registration acts that the instrument which gives rise to the equitable mortgage is recorded. Geo. Dig., " Registration," p. 653, § 7, citing *Humphries* v. *Bartee*, 10 S. & M. 282.

But if we treat the deed and defeasance taken together as making a legal mortgage, the registration of the deed to Taylor was sufficient. Jones on Mort., § 548, and cases cited.

In that view the transaction assumes the form of two separate instruments, the one conveying the property absolutely to Taylor and is for Taylor's protection, the other giving McIntosh the right to repurchase and for the benefit of McIntosh. Each had an instrument which he might record for his own protection. Taylor recorded his deed, and thereby gave notice to the world that he was the owner in fee of the property and that no one must trust McIntosh on the faith of it.

As to the world, he became thereby precisely as the owner of the title of land who has given his bond to convey the same. Non-registration avoids the interest of the grantee in favor of the creditors of the grantor in the unrecorded instrument only. *Miss. Valley Co.* v. *Chicago R. R. Co.*, 58 Miss. 846.

Is an absolute deed intended for a security void under the statute of frauds?

Waite, in his late work on Fraudulent Conveyances, first appearing in 1884, says of these conveyances, § 238 :

" If, however, the transfer was not devised by the debtor to defraud or delay his creditors, or if it was so designed and the trustee or mortgagee offered no aid in carrying out the intention of the principal, the transaction is valid, though open to suspicion. A conveyance by way of security must be in all respects as clean and clear as a conveyance for permanent ownership.

" If no fraud was in fact intended, the security may be enforced, but if the debtor made a secret reservation, or if the creditor comes into court with a fraudulent claim of absolute title, the other creditors may avoid the transaction."   *   *   *   *   *   *

Probably the weight of the better authority and the sounder reasoning is to the effect that an absolute conveyance by way of security is a badge of fraud, which may be explained by evidence of an honest intent. *Harrison* v. *Phillips Academy*, 12 Miss. 456 ; *Stephens* v. *Hinkley*, 43 Maine, 441 ; *Reed* v. *Woodman*, 4 Maine 400 ; *Smith* v. *Onear*, 19 Vt. 429 ; *Gaffings' Assignee* v. *Signeago*, 1 Dillon 158 ; *Chinking* v. *Hatch*, 3 Seeman 474 ; *Baker* v. *French*, 18 Vt. 460 ; *Emmonds* v. *Bradley*, 56 Maine 333 ; *Moore* v. *Rice*, 34 New Jersey Eq. 90 ; *Columbia Bank* v.

*Jacobs,* 10 Mich. 349 ; *Richard* v. *Allen,* 25 Mass. 405 ; *Ins. Co.* v. *Chandler,* 16 Mass. 275 ; *Gibson* v. *Seymour,* 4 Vt. 518 ; *Rucker* v. *Abel,* 8 B. Monroe 566 ; *Gibbs* v. *Thompson,* 7 Humph. 179 ; *Blair* v. *Boss,* 4 Blackf. 539 ; *Ingles* v. *Donalson,* 2 Hayw. 57 ; *Reed* v. *Jewett,* 5 Maine 96 ; *Spaulding* v. *Austin,* 2 Vt. 555 ; *Oriental Bk.* v. *Hoskins,* 44 Mass. 332 ; *Cutler* v. *Dickinson,* 25 Mass. 386 ; *Yoder* v. *Standiford,* 7 Mon. 478 ; *Wiley* v. *Larklee,* 8 Humph. 717 ; *Waters* v. *Riggin,* 19 Md. 536 ; *Daswell* v. *Adler,* 28 Ark. 82 ; *Thompson* v. *Pennell,* 67 Maine 159 ; *Gibson* v. *Hough,* 60 Geo. 588 ; *Phinizy* v. *Clark,* 62 Geo. 623.

COOPER, J., delivered the opinion of the court.

So far as we are advised, no other State save Pennsylvania has decided that a failure to record a written defeasance, which is separate from the instrument by which the estate has been conveyed, will nullify the record of the absolute conveyance so that the land may be subjected to sale by the creditors of the grantor who holds the unrecorded defeasance.

We decline to adopt the views of the courts of that State, not only as opposed to the overwhelming weight of authority, but also because we think the rule announced in that State clearly wrong.

We also decline to follow those decisions which declare that a mortgage in the form of an absolute conveyance is *per se* and conclusive evidence of a fraudulent intent on the part of the grantor and grantee. It is a circumstance to be considered in determining the question of fraud, and entitled to such weight as other circumstances surrounding the transaction may indicate ought fairly to be given to it.

An examination of the facts of the case now before us has satisfied us beyond all reasonable doubt that the dealings between McIntosh and Taylor were altogether fair, that no creditor has been defrauded nor was intended to be.

The decree is affirmed.