PHILIP S. CONVERSE AND ANOTHER v. H. N. JENSON AND OTHERS.[1]

February 15, 1924.

No. 23,653.

**Purchase of sheriff's certificate of sale on foreclosure by mortgagor's vendee—subrogation—merger of title.**

Plaintiffs are husband and wife. The husband owned a duplex, the wife a business block, the homestead of the family. Upon each property plaintiffs had executed a first and second mortgage, duly recorded. Thereafter plaintiffs executed a third mortgage to defendant Merchants Bank for $2,627.65, covering both properties, warranting the premises to be free and clear of encumbrances "except mortgages of record," and covenanting to defend the title against all claims. They then conveyed an undivided half in the duplex to defendant Jenson, using the same warranty and covenants as in the third mortgage. Jenson was to pay therefor $3,600 when the encumbrances were released. Subsequently, for $300, the remainder of the duplex was conveyed to defendant Baker by plaintiffs with the same covenants as in the Jenson deed. The second mortgage on the duplex was foreclosed by the defendant Security Bank, the mortgagee. Jenson and Baker procured from that bank an assignment of sheriff's certificate, and subsequently, without payment, procured a release of the duplex from the third

[1]Reported in 197 N. W. 490.

mortgage. In this action to cancel the third mortgage and note or reinstate it on the duplex and for other relief it is *held*:

(1) Jenson and Baker were not required to pay any of the mortgages. Nor did any moral or legal duty towards plaintiffs forbid their acquisition of title through the foreclosure of the second mortgage, nor of the release from the third.

(2) So far as Jenson was concerned it was the duty of plaintiffs to cause his undivided one-half to be released from all encumbrances, before payment of the purchase price, according to the findings, amply sustained.

(3) The evidence indicates that the Merchants Bank released the duplex in good faith, plaintiffs having repeatedly sought such release in order to obtain payment from Jenson.

(4) Under no view can plaintiffs be considered sureties merely for Jenson, or by payment of the third mortgage be subrogated to the rights of the mortgagee as to him.

(5) Baker could not have complained if plaintiffs had been able to obtain a release of the business block from the third mortgage, nor can they because Baker obtained a release of the duplex, and neither party could insist upon an apportionment of the debt between the two properties.

(6) The interest acquired by Jenson and Baker through the foreclosure of the second mortgage did not merge in the estate acquired by the deeds from plaintiffs.

Action in the district court for Becker county against the Security State Bank of Detroit, the Merchants National Bank of Detroit and two individual defendants, to cancel a note and mortgage for $2,627.65, and to obtain the other relief mentioned at the end of the fifth paragraph of the opinion. The case was tried before Roeser, J., who made findings and dismissed the action. From orders denying their motions to amend the findings and conclusions and for a new trial, plaintiffs appealed. Affirmed.

*Charles S. Marden, C. G. Dosland* and *Douglas, Kennedy & Kennedy,* for appellants.

*Johnston & Carman,* for respondent Baker.

*P. F. Schroeder* and *H. N. Jenson,* for respondents Merchants Bank and Jenson.

HOLT, J.

Plaintiffs appeal from two orders. The order refusing to amend the findings of fact is not appealable and need not be referred to; but the order denying a new trial, besides presenting for review rulings at the trial, also challenges certain findings and the refusal to amend them.

The controlling facts will be stated briefly.

Plaintiffs are husband and wife. In 1916 they lived in Detroit, Minnesota, on a lot which will be hereafter called the "business block." It was owned by the wife, and was in 1916, and has ever since been, the homestead of the parties. In that year a business block was erected on the lot. The needed funds were raised by a first mortgage of $10,000 and a second of $790 to the Merchants National Bank. Neither has been paid. In 1908 the husband owned a residence lot in the city and in that year built a duplex thereon. This property will be referred to as the "duplex." On this property there was, at the time the building was constructed on the business block, a first mortgage of $4,000 and a second of $500 to the Security State Bank. The first remains unpaid; the second has been foreclosed.

All four mortgages were duly recorded prior to September, 1916. In that month plaintiffs executed a mortgage to the Merchants National Bank upon both the business block and duplex to secure their note to the bank for $2,627.65. In this mortgage plaintiffs warranted the premises to be free and clear of encumbrances except mortgages of record, and covenanted to defend the title against all claims. In August, 1917, all five mortgages being of record, plaintiff sold an undivided half interest in the duplex to H. N. Jenson for $3,600. The consideration in the deed was one dollar, and the covenants as to encumbrances and defense of title against all claims was identical with those in the third mortgage. The court finds that Jenson "was to pay the sum of $3,600 for an undivided one-half interest in said premises, free and clear of all encumbrances, and that the same might be used to assist said Converse in clearing said premises of such prior encumbrances." In December, 1918, plaintiffs conveyed the duplex to A. A. Baker for

$300, Jenson being already in possession, under an agreement when he purchased to occupy the lower story of the building. Baker's deed contained the same covenant as the Jenson deed in regard to encumbrances and warranty of title against all claims. When Jenson received his deed he did not pay any part of the purchase price, but, at the request of defendant P. S. Converse, paid taxes and interest due upon the mortgages in the sum of $869.55.

In December, 1918, the Security State Bank began the foreclosure proceedings, defendant Jenson, acting as its attorney therein, of which defendant P. S. Converse was informed by Jenson and made no objection. At the sale, February, 1919, the duplex was bid in by the bank and a sheriff's certificate in due form issued to it. Thereafter in August Jenson and Baker procured a written assignment of the certificate. Subsequently, without the payment of any consideration, Jenson and Baker obtained from the Merchants National Bank a release of the duplex from its third mortgage. No redemption was made. The object of the suit is to have this mortgage discharged as to the business block and the note secured thereby canceled, to have it adjudged that Jenson and Baker pay the second mortgage upon the duplex, that the foreclosure of the $500 mortgage and the assignment of the sheriff's certificate did not cut off the lien of said third mortgage; or else that the release of the duplex from that mortgage be annulled, and that, if any of that relief be denied, plaintiffs have judgment against Jenson and Baker for $2,627.65.

The complaint charged defendants with fraud and conspiracy, but there was no evidence sustaining such a charge, unless the mere purchase of the sheriff's certificate from the Security Bank and obtaining the release from the Merchants Bank can be considered constructive fraud. The purchase of the certificate came about in this way; Mr. Rathbun, an officer of the Security Bank, acquainted with defendant Baker, conceived the idea that the two might buy this certificate and take a chance on no redemption by the holder of the third mortgage. The Security Bank agreed to assign. Jenson heard thereof and took Rathbun to task for attempting to freeze him out. Rathbun desired to be on good terms with Jenson

and told the latter to take his place. It was then discovered that the bank had inserted the name of the Merchants Bank in the assignment as assignee instead of the names of Rathbun and Baker. Rathbun thereupon took the instrument to the Security Bank, where the name of the Merchants Bank was erased and the names of Jenson and Baker were inserted. These two men paid the consideration, accepted and recorded the assignment. The Merchants Bank had never negotiated for an assignment of the certificate.

So far as Baker and Rathbun were concerned neither owed plaintiffs any duty of protection. Certainly Rathbun could lawfully buy the sheriff's certificate. He stood in no relation whatever to plaintiffs or to the Merchants Bank. Baker had paid plaintiffs in full. The evidence would not sustain a contrary finding. There is no pretence of any agreement by Baker, apart from the deed, to pay any encumbrance, and the conveyance to him is not even made subject to the mortgages of record. Nor was there any moral obligation on the part of Baker to redeem from the foreclosure. He had a perfect right to cut out the third mortgage, or obtain a release therefrom upon any terms acceptable to that mortgagee.

Jenson stands in a slightly different relation to plaintiffs, in that he had not paid the full consideration when the foreclosure took place or when the time of redemption expired. Could he have got a clear title by making a redemption and without paying more than was unpaid of the purchase price, perhaps he might have been held obligated to redeem. But the findings are to the effect that the bargain was that Jenson should have an undivided one-half, free from encumbrances, for $3,600. He had paid a good part thereof, and plaintiffs never caused his one-half to be released from any of the mortgages. There is also this finding, challenged by plaintiffs, but amply sustained, we think: "That after the execution and delivery of said deed the said Converse made repeated efforts to obtain a release of the third mortgage, being the mortgage hereinafter described of $2,627.65, but failed in obtaining the same. That said Jenson then, at his request, made repeated efforts to the same end, but also failed. That the existing encumbrances on said premises far exceeded the amount of $3,600, and unless some satisfactory

arrangement could be made with the holders of such encumbrances whereby they released their claims, it would not be possible for said Jenson to obtain what he had purchased, to-wit, an undivided one-half interest free of all encumbrances.  That said Jenson has at no time paid said full consideration of $3,600 on account of the outstanding encumbrances, but has at all times been ready, able and willing to do so whenever the conditions of the sale and purchase were complied with by said Converse." Under the conditions thus found no equitable or legal duty required Jenson either to pay the second mortgage or redeem from its foreclosure, or to refrain from seeking a release from the third mortgage, for even now he may have to pay more than $3,600 to get what he bought.  As between plaintiffs and Jenson it was incumbent on them to free his undivided one-half of the duplex from all the mortgage liens before the agreed purchase price safely could be paid by him.

Nor does it appear in this action that plaintiffs are entitled to any equitable relief against defendant the Merchants Bank. They have not paid any part of the mortgage debt.  Both agreed to pay it, both covenanted to defend the title of the premises mortgaged against all claims not only as to the duplex but also to the business block.  There is evidence that P. S. Converse sought and desired a release of the duplex from the third mortgage.  The Merchants Bank wanted a certain amount paid.  This plaintiffs were unable to raise.  There is testimony tending to show that P. S. Converse would have been glad to have procured the release of the duplex from the Merchants Bank without a consideration, and also that this third mortgage was given to take up notes and obligations incurred by plaintiffs in the erection of the business block, so that equitably that property should first go in payment of the mortgage.  But, in any event, the evidence does not warrant a finding that the Merchants Bank intended to defraud plaintiffs in releasing the duplex from its mortgage.  F. S. Converse had importuned the bank for the release.  He had besought Jenson to obtain it.  There is nothing to indicate to the bank that plaintiffs had changed their minds when it did give the release.  And finally, if in any manner the bank has imperiled its third mortgage on the business block

by the release of the duplex, it is a matter with which Baker and Jenson are not concerned and may be determined when the bank attempts to enforce the mortgage or debt.

There are several assignments of error presenting rulings on the admission or rejection of evidence. We find therein nothing that calls for discussion, for the controlling findings are upon evidence as to which there is practically no dispute. Technical errors in the admission or rejection of evidence relating to immaterial or inconsequential matters do not make for reversal. The same holds true as to findings challenged or requested to be amended that do not bear upon the correctness of the conclusions of law. For instance, the result is not changed by the finding that Jenson paid the whole of the (1917) year's taxes at plaintiffs' request, when, of course, it was his duty to pay one-half thereof, for how much Jenson still owed plaintiffs upon the purchase price was not an issue made by the pleadings nor litigated by consent. The material fact in respect to the matter was whether Jenson safely could have paid the encumbrances, if he was to pay only $3,600 and receive an undivided one-half clear, as the court found. That finding does not permit the application of the doctrine of Travers v. Dorr, 60 Minn. 173, 62 N. W. 269, that the duplex became the primary fund for the payment of mortgage debt and plaintiffs' sureties, for it was their duty to free or release Jenson's undivided one-half of the property from this very mortgage debt before he could be called to pay the balance of the purchase price.

Plaintiffs under the agreement with Jenson could not by the payment of the third mortgage have become subrogated to the rights of the mortgagee as against Jenson.

It is clear from the wording of the instruments above referred to that no personal obligation rests on Jenson or Baker to pay any of the mortgages. Sandwich Mnfg. Co. v. Zellmer, 48 Minn. 408, 51 N. W. 379; Rooney v. Koenig, 80 Minn. 483, 83 N. W. 399. And so far as Baker is concerned we apprehend he could not complain if plaintiffs had obtained a release of the business block from the third mortgage, and what more right have they to complain because of Baker's obtaining a release of the duplex? Neither party

could insist as to the other of an apportionment of the lien between the two properties.

There is a further claim by plaintiffs that the title acquired through the foreclosure of the $500 mortgage merged in that already held by Jenson and Baker. But it is obvious that the assignment of the sheriff's certificate was procured not for the purpose of merger or of redemption. The assignees desired to acquire and hold the estate thereby procured separate from the interests obtained under the conveyances from plaintiffs. To so do was decidedly to their advantage in case of no redemption. The taking of this assignment must be governed by the same equitable principle which prevents a merger when the owner of the equity of redemption purchases the mortgage on the land. It was clearly to their interest that there should be no merger and hence their intention not to merge will be presumed. Horton v. Maffitt, 14 Minn. 216 (289), 100 Am. Dec. 222; Smith v. Lytle, 27 Minn. 184, 6 N. W. 625.

Upon the argument it was contended that Jenson had redeemed from the foreclosure of the second mortgage. But no such issue was presented by the pleadings or litigated at the trial.

Upon the record in this case the conclusion arrived at by the learned trial court is right. The controlling findings of fact are substantially without dispute. The appeal from the order refusing to amend the findings is dismissed. The order denying a new trial is affirmed.